BOYD WILKIE, Respondent, v. PRISCILLA WILKIE GORDON and Others, Defendants, Impleaded with PAUL LAVENBURG, Appellant.

Second Department, March 3, 1930.

*Lloyd L. Osborn* [*Henry M. Bellinger* with him on the brief], for the appellant.

*Clinton T. Taylor* [*James B. Stilson* with him on the brief], for the respondent.

YOUNG, J.   The action is brought for the partition of real property situated at the southeasterly corner of Sixth street and First avenue in the city of Mount Vernon, Westchester county.   The appellant's answer, after various denials, sets up title in himself by adverse possession, and, also, the bar of a judgment in favor of the defendant in a former ejectment action involving the same property, brought by Eliza Wilkie (through whom the plaintiff in this action claims title) against Daniel D. Lawlor, the defendants' predecessor in title.

About 1851 one John Stevens acquired title to a tract of land in the town of Eastchester (now part of the city of Mount Vernon), including the property in question.   He divided this tract in lots and made a map.   Through mesne conveyances the title vested in William Taber, who conveyed the property to Eliza Wilkie on July 21, 1875.   Thereafter, a deed of correction and confirmation was made on October 1, 1875, by Taber to Eliza Wilkie.   Both of

these deeds were duly recorded. Eliza Wilkie died September 14, 1914, intestate, leaving the plaintiff and the defendants Gordon, McCarthy and Desmond, her only heirs at law.

The early record title under which appellant claims is the same as that of the respondent. A judgment roll in an action of ejectment brought by Eliza Wilkie against Daniel Lawlor was put in evidence by the appellant. Whether or not this judgment constitutes a bar to this action is the principal question raised upon this appeal. Up to the time of the rendition of this judgment, there was nothing of record by way of conveyance or otherwise to show any title to this property in Lawlor, appellant's predecessor in interest. The earliest deed under which appellant claims title is a quitclaim deed made by George Stevens and others as heirs of John Stevens, deceased, to Jane Lawlor, the wife of Daniel D. Lawlor, dated January 21, 1887. Jane Lawlor died on June 2, 1908, and Daniel D. Lawlor on October 24, 1916. Both left wills and, by conveyance by their devisees, their interest in the property vested in Gertrude Alexander, who thereupon conveyed the property to the appellant by deed dated March 3, 1926, and duly recorded.

Appellant also introduced testimony to support his defense of adverse possession. This testimony is extremely vague and uncertain. While some of it, if believed, might establish some acts of possession for limited periods, it fell far short of supporting either a title in appellant and his predecessors in interest or an adverse possession under a claim of title which would prevent partition.

The learned Special Term rendered a decision in the plaintiff's favor, finding title to the property in the plaintiff and the defendants, heirs at law of Eliza Wilkie, as tenants in common, and that Alexander, Lavenburg and Trainor had no title or interest therein, and directing judgment for partition and sale of the property. Upon this decision, the interlocutory judgment appealed from was entered.

The appellant contends that the deed to Eliza Wilkie was void, having been obtained when the premises were in the possession of Daniel Lawlor, claiming under a title adverse to her. This contention is made under the provisions of the Revised Statutes in force at the time of the conveyance in question, that " Every grant of lands shall be absolutely void, if at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor." (1 R. S. 739, § 147; now Real Prop. Law, § 260.)

In support of this contention, the appellant refers to the judgment roll in the ejectment action of Eliza Wilkie against Daniel D. Lawlor, introduced in evidence. That action was begun in March, 1877, the summons being dated March 24, 1877. The complaint in that

action alleges in substance that plaintiff was, on October 2, 1875, and for some time previous thereto, has since continued to be and now is the lawful owner and seized in fee simple of the property in question, and that the defendant without her consent did enter into and upon the premises and ever since has been and now is in possession thereof and now unlawfully withholds such possession from the plaintiff.

The deed to Eliza Wilkie was made on July 21, 1875. The allegations of that complaint are, without regard to the effect of the judgment therein, an admission or declaration on the part of Eliza Wilkie that, at the time of the commencement of this ejectment suit, she was out of possession and that the defendant Lawlor was in possession unlawfully; but this was in 1877, and that complaint standing alone does not prove that at the time of the deed to her in 1875, the property was in the actual possession of Lawlor, claiming under a title adverse to her grantor. In order to sustain his claim that it was in such adverse possession at that time, the appellant has resort to the decision and judgment in that suit. The answer interposed by Lawlor in substance denied plaintiff's title at the times alleged in the complaint; also that he entered upon the premises since her pretended title arose; also that he unlawfully withheld the premises and also that plaintiff was, or the parties from whom she derived her pretended title were, in possession of the property within twenty years next preceding the commencement of the action, and alleged that, at the time that plaintiff's pretended title, or that of those from whom she derived the same, arose, the defendant was in possession of the premises, holding adversely to said claimants. That action was tried by the court without a jury and resulted in a decision in defendant's favor, dated November 19, 1877, in which it was found as a fact that plaintiff (Eliza Wilkie) had not made out a case against the defendant, in that she had not shown a right to recover possession of the premises described in the complaint, and, as a conclusion of law, that the complaint be dismissed, with costs to the defendant. The judgment was thereupon entered, dated December 8, 1877, dismissing the complaint and directing the recovery by defendant of the costs of the action. From the issues presented by the pleadings in that action and the decision and judgment therein, appellant argues in effect that, in order to sustain this judgment, the court must have found twenty years' adverse possession by Lawlor before the commencement of the action, and that, therefore, at the time of the deed to Eliza Wilkie in 1875, her grantor was out of possession and the deed was void under the statute above referred to.

Whether this argument is sound or otherwise depends upon the

effect of that judgment. While the allegations of the complaint are competent as a declaration or admission of Eliza Wilkie binding upon her and her successors in interest, the judgment has no such force unless it is a final judgment on the merits, and *res adjudicata*. If, therefore, that judgment is not on the merits, this argument fails.

This brings us to a more serious question. Appellant contends that the judgment in ejectment is a complete bar to the present action by the heirs at law of Eliza Wilkie; in other words, that it is *res adjudicata* and binding upon such heirs at law, and that, therefore, this action for partition cannot be maintained.

Bearing in mind that this judgment was recovered on December 8, 1877, it becomes necessary to examine the statutes relating to this subject which were then in force.

In 1876 the Legislature enacted a Code concerning courts, officers of justice, and civil proceedings (Chap. 448). By chapter 449 of the same year (§ 1) this Code was referred to as "The Code of Remedial Justice." Both of these acts were passed June 2, 1876, and chapter 448 provided that it should take effect on May 1, 1877. Chapter 449 was enacted for the purpose of explaining, defining and regulating the effect of this Code. By chapter 318 of the Laws of 1877 it was provided that the operation of the provisions of chapters 448 and 449 of the Laws of 1876, with certain exceptions, should be suspended until September 1, 1877. By chapter 416 of the Laws of 1877 numerous amendments were made to this Code, and by section 1 thereof this Code was designated the "Code of Civil Procedure." These statutes only covered the first part of the Code of Civil Procedure and ended with section 1495. Section 1209 thereof, as amended by chapter 416 of the Laws of 1877, provided: " A final judgment, dismissing the complaint, either before or after a trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon the merits." This section took effect on September 1, 1877. It was a new section and was not derived from any prior statutory provision upon this subject. Prior to that time, the question as to the effect of a judgment dismissing a complaint was governed by the rules of the common law. It will be observed that, although this section took effect prior to the entry of the judgment in *Wilkie* v. *Lawlor*, by its terms it only affected actions commenced thereafter. As the ejectment action in question was commenced in March, 1877, section 1209 (*supra*), therefore, has no application.

In *Coit* v. *Beard* (33 Barb. 357), decided in 1861, it was held that the dismissal of a complaint is in all respects identical with a non-

suit in actions which were formerly called common-law actions, and that a judgment dismissing the complaint is no bar to a second action for the same cause. In that case the court said: "A judge before whom a common law cause is tried without a jury, acts in the double capacity of court and jury; and when, instead of rendering a judgment in express terms for the defendant, he orders that the complaint shall be dismissed, it is to be presumed he then acts as the court, exercising the prerogative, which it has always possessed, of nonsuiting the plaintiff, either before or after the evidence is given on both sides."

The second part of the Code of Civil Procedure was enacted by chapter 178 of the Laws of 1880, and took effect generally on September 1, 1880. Before the enactment of this supplement to the Code of Civil Procedure, the practice in actions of ejectment was governed by the Revised Statutes (Part 3, chap. 5, tit. 1, §§ 1–57). Section 36 of this title provided as follows: "Every judgment in the action of ejectment rendered upon a verdict of a jury, or a report of a referee upon the facts, or upon a decision of a single judge upon the facts, shall be conclusive as to the title estab-lished in such action, upon the party against whom the same is rendered, and against all persons claiming from, through or under such party, by title accruing after the commencement of such action, subject to the exceptions hereinafter contained." (2 R. S. 309, § 36, as amd. by Laws of 1862, chap. 485.)

This provision of the Revised Statutes defining the effect of a judgment in ejectment, applied to the judgment in *Wilkie* v. *Lawlor*, unless that judgment did not come within its language. Respondent contends that it did not because it does not in terms establish any title in the defendant. The appellant, however, asserts that the effect of this judgment is to establish Lawlor's title by adverse possession, and the plaintiff's want of title, and that, by virtue of this statute, this judgment is conclusive upon Eliza Wilkie and her heirs at law.

This provision of the Revised Statutes, however, must be con-strued in connection with the common-law rule above referred to as to the effect of a judgment dismissing the complaint. Had section 1209 of the Code of Civil Procedure been applicable, I would have been inclined to hold that the judgment was upon the merits, because it was apparently rendered after a full trial of the issues, and I think it did appear by the judgment roll that it was upon the merits, but section 1209 (*supra*), as I have pointed out above, had no application to the judgment in question, and that judgment was, therefore, governed by the common-law rule, under which every judgment dismissing the complaint is equivalent to a nonsuit, and

not upon the merits. Considering, therefore, this common-law rule in connection with section 36 of the Revised Statutes, above quoted, it is my opinion that that section applies only to a judgment rendered upon the merits and not to a judgment amounting to a mere nonsuit within the common-law rule. Being a judgment of nonsuit, therefore, it cannot have the effect of establishing title in the defendant therein.

The interlocutory judgment appealed from should, therefore, be affirmed, with costs.

Present — LAZANSKY, P. J., YOUNG, HAGARTY, CARSWELL and SCUDDER, JJ.

Interlocutory judgment unanimously affirmed, with costs.